786 So.2d 409 (2000)
John FLORENCE, Appellant
v.
STATE of Mississippi, Appellee.
No. 1999-KA-01664-COA.
Court of Appeals of Mississippi.
November 21, 2000.
Rehearing Denied February 6, 2001.
Certiorari Denied May 24, 2001.
*410 Thomas M. Fortner, Andre' De Gruy, Robert M. Ryan, Jackson, Attorneys for Appellant.
Office of the Attorney General by Billy L. Gore, Attorney for Appellee.
BEFORE SOUTHWICK, P.J., IRVING, AND PAYNE, JJ.
IRVING, J., for the Court:
¶ 1. John Florence was tried and convicted of the felony offense of burglary of building other than a dwelling. He was sentenced, as an habitual offender, to serve a term of seven years in the Mississippi Department of Corrections. Following the denial of his motion for JNOV and new trial, Florence has filed this appeal wherein he contends that the trial court erred (1) in granting certain aiding and abetting instructions for the State and denying certain lesser-included-offense instructions for the defense, (2) in allowing peremptory jury strikes contrary to the spirit of Miss.Code Ann. § 13-5-2 (Supp. 2000) and Batson v. Kentucky and (3) in *411 allowing certain expert testimony by Officer Steven McDonald without prior disclosure and in violation of Rule 702 of the Mississippi Rules of Evidence. Finding no reversible error, we affirm.

FACTS
¶ 2. Jackson Police Officer Steven McDonald testified that at approximately 2:30 a. m. on the date of the break-in, he noticed an individual, later identified as Florence, exiting Foster Automotive carrying an armful of property. He also testified that the business's burglar alarm was sounding and an occupied vehicle parked nearby sped off as he approached in his patrol car. McDonald further testified that Florence claimed to be an employee of the business and claimed to be removing the property with the permission of the business owner.
¶ 3. Over Florence's objection, McDonald was allowed to testify that a white powdery substance on Florence's clothing at the time of his arrest was consistent with sheet rock powder. McDonald said he based this opinion, in part, on the fact that the only evidence of a forced entry found at the scene of the break-in was a hole that had been cut into a sheet rock wall. In addition, McDonald testified that as a child he had spent a great deal of time with his father in his father's cabinet installation business which often involved the use of sheet rock. The wall with the hole cut into it separated the main area of the business from a storeroom. The storeroom was covered with only a tin roof, a corner of which had been forced upward, leaving about a three foot wide opening. It appeared that the intruder had used the opening to enter the storeroom and then made a hole in the sheet rock wall of the storeroom to gain entry into the main area of the business.
¶ 4. The only other witness called by the State was Antonio Foster, Jr., the owner of the burglarized establishment. Foster identified the property, which was removed from the business, as belonging to him and denied that Florence had any lawful right to be in the building or in possession of the property.
¶ 5. Florence was the sole witness in his defense. He testified that he suffers from a physical disability which renders him physically unable to have committed the crime in the manner offered by the State. In support of this claim, Florence offered his social security disability medical records into evidence. Said records contained the opinion of an administrative law judge finding that Florence was not capable of, and never would be capable of, climbing.
¶ 6. Florence testified that he saw the property lying on the sidewalk in the doorway of the building as he was walking to his aunt's residence. He said that he became suspicious because he saw an occupied automobile parked nearby with a garbage bag on it. Florence stated that he picked up the items to secure them for his friend, Foster. It was Florence's testimony that at the very moment he picked up the property, the police arrived and the vehicle left.

Analysis of Issues Presented

1. Aiding and Abetting Instructions
¶ 7. Florence argues that instruction S-2 is essentially verbatim to the instruction granted in Hornburger v. State, 650 So.2d 510 (Miss.1995), and that granting the instruction was unfairly prejudicial to his defense and wholly unsupported by any evidence elicited during the trial. Instruction S-2 reads as follows:
The Court instructs the Jury that each person present at the time, and consenting to and encouraging the commission of a crime, and knowingly, wilfully and *412 feloniously doing any act which is an element of the crime or immediately connected with it, or leading to its commission, is as much a principal as if he had with his own hand committed the whole offense; and if you believe from the evidence, beyond a reasonable doubt, that the Defendant, John Florence, on or about August 14, 1998, was present, consented to and encouraged the commission of the crime of business burglary and did then and there wilfully, unlawfully, knowingly, and feloniously do any act which is an element at the crime of business burglary, or immediately connected with it, or leading to its commission, then in that event, you should find the Defendant, John Florence, guilty as charged (emphasis added).
The instruction in Hornburger reads as follows:
The Court instructs the Jury that each person present at the time, and consenting to and encouraging the commission of a crime, and knowingly, willfully and feloniously doing any act which is an element of the crime or immediately connected with it, or leading to its commission, is as much a principal as if he had with his own hand committed the whole offense; and if you find from the evidence beyond a reasonable doubt that the defendant, Gregory Hornburger, a/k/a Greg Hornburger, did willfully, knowingly, unlawfully and feloniously do any act which is an element of the crime of burglary of a building, or leading to its commission, then and in that event, you should find the defendant guilty as charged.
Hornburger, 650 So.2d. at 513.
¶ 8. In Hornburger, the Mississippi Supreme Court held that granting the instruction was improper but harmless. Id at 515-516. Florence argues that since the instructions are so similar it was improper for the trial court to grant it in his case. He goes on to argue, however, that his case is readily distinguishable from Hornburger with regard to the harmless error aspect. He bases this argument on the fact that Hornburger was found by substantial evidence to have actively participated with another in the commission of the business burglary. Florence argues that in his case there was no credible evidence adduced at trial to even suggest that he had acted in concert with anyone and that therefore, the only issue to be resolved is whether or not the error was harmless. He concludes that the error was anything but harmless and warrants the reversal of his conviction.
¶ 9. In reference to an almost identical instruction in McClendon v. State, 748 So.2d 814, 816 (Miss.Ct.App.1999), this Court held as follows: "[T]he instruction in Hornburger failed to inform the jury that in order to convict, it must first find that he was `present at the time, consenting to, and encouraging the commission of the crime.' It merely stated that if the defendant did `any act which is an element of the crime of burglary of a building, or leading to its commission, then and in that event, you should find the defendant guilty as charged.'" This Court went on to hold that there was no error on the part of the trial court in granting the instruction because the problem in Hornburger was corrected in McClendon's case. Id. at 817.
¶ 10. Similarly as in McClendon, the problem in Hornburger was corrected in the case sub judice. Instruction S-2 clearly instructs the jury that it must first find that Florence was present at the time, consenting to, and encouraging the commission of the crime. We can find no error in the instruction as given and further find that there was an evidentiary basis for the instruction. A discussion of *413 the evidentiary basis for S-2 follows in our discussion of instruction S-3 since Florence makes the same allegation of lack of evidentiary support with regard to the granting of instruction S-3. Instruction 3 is an aider and abettor instruction and provides as follows:
The Court instructs the jury that if two or more persons are engaged in the commission of a felony, then the acts of each in the commission of such felony are binding upon all, and all are equally responsible for the acts of each in the commission of such felony.
¶ 11. By his own testimony, and by the admission of his medical records into evidence, Florence tried to convince the jury that he was physically incapable of achieving entry into the building as suggested by the evidence at the scene and the testimony of Officer McDonald. The conclusion being that entry into the building must have been achieved by someone other than Florence. Police Officer McDonald and Florence both testified that an occupied automobile parked at the business sped away when Officer McDonald drove up. Both also testified that a fairly large amount of property had been removed from the business and placed on the sidewalk near the car.
¶ 12. The most obvious and logical inference to be drawn from these facts is that the car and its occupant were part of the burglary and were there to carry away the property which was, by all accounts, more than one person could simply walk away with. This inference was made more plausible by virtue of the vehicle's hasty departure upon the arrival of the police. As the Mississippi Supreme Court said in Swinford v. State, 653 So.2d 912, 915 (Miss.1995), "[A]iding and abetting may be manifested by acts, words, signs, motions, or any conduct which unmistakably evinces a design to encourage, incite or approve of the crime, or even by being present, with the intention of giving assistance, if necessary, though such assistance may not be called into requisition."

2. Lesser Offense and Lesser-Included-Offense Instructions
¶ 13. Florence claims that the trial court erred in denying proffered jury instructions D-4 and D-5. Instruction D-4 was a lesser offense instruction which would have allowed the jury to find Florence guilty of larceny, and D-5 was a lesser-included-offense instruction which would have allowed the jury to find Florence guilty of trespass. Florence contends that there was sufficient evidence in the record to warrant the granting of these instructions and that it was error to deny these instructions because they were the only instructions submitted that set forth his theory of the case. He further argues that there was ample justification for giving the instructions when considering the great disparity of sentences for the greater and lesser offense. He points out that burglary of a building, other than a dwelling, carries a maximum sentence of seven years compared to a maximum sentence of six months for trespassing or petit larceny.
¶ 14. While a defendant is entitled to have jury instructions given which present his theory of the case, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence. Heidel v. State, 587 So.2d 835, 842 (Miss.1991). Where a defendant's proffered instruction has an evidentiary basis, properly states the law, and is the only instruction presenting his theory of the case, refusal to grant it constitutes reversible error. Hester v. State, 602 So.2d 869, 872 (Miss.1992). The Mississippi Supreme Court held in Harper v. State, 478 So.2d 1017, 1021 (Miss.1985), that the *414 standard for determining whether an evidentiary basis exists for a proffered instruction is as follows:
Lesser included offense instruction should be granted unless the trial judgeand ultimately this courtcan say, taking the evidence in the light most favorable to the accused, and considering all reasonable references which may be drawn in favor of the accused from the evidence, that no reasonable jury could find the defendant guilty of the lesser included offense (and conversely not guilty of at least one element of the principal charge).
¶ 15. Trespass is a lesser-included-offense to every burglary. Id. If a rational or a reasonable jury could have found Florence not guilty of business burglary yet guilty of trespass, then the lesser-included-offense instruction on trespass should have been granted. Evans v. State, 725 So.2d 613, 664 (Miss.1997). It is this Court's finding that no rational or reasonable jury could have found Florence not guilty of business burglary, yet guilty of trespass.
¶ 16. Florence's own testimony was that he was never inside the building, but that he took possession of the property after observing it just lying "[i]n between the [front] door [of the business] and this automobile with this large garbage bag sitting on it." This testimony alone refutes Florence's claim that the trial court should have granted his lesser-included-offense instruction for trespass because, according to this testimony, Florence was never inside the building. Therefore, there was no trespass. Furthermore, Officer McDonald testified that he never observed Florence inside the building. Absent some evidence that Florence trespassed in the business without participating in the burglary, there was no evidentiary basis for granting the instruction.
¶ 17. Florence contends that the evidence, at best, constituted proof of larceny, and the lesser offense larceny instruction should have been granted. The uncontradicted proof, however, was that the property in Florence's possession was removed from the business as the result of a breaking and entering. Viewing the evidence in the light most favorable to Florence and considering all reasonable inferences which may be drawn in favor of Florence, this Court finds that no reasonable, hypothetical juror could have returned a verdict of guilty of larceny or trespass and not guilty of business burglary committed by him alone or aided and abetted by another. There was simply no evidentiary support for D-4 and D-5.

3. The Batson Issue
¶ 18. Florence argues that the prosecutor exercised its peremptory challenges in a discriminatory manner in violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) and Miss.Code Ann. § 13-5-2 (Supp.2000), and thereby denied him a fundamentally fair trial. The relevant portion of the record reveals the following:
MR. DE GRUY: Your Honor, we have an objection before that. The State has used four of its peremptory challenges to strike all African Americans, and we would make a Batson objection and ask that the state be required to come forth with its reasons.
THE COURT: All right. I prefer to go ahead and complete the selection process so that I can kind of get a complete view of the states
MR. DE GRUY: Your Honor, the other this is somewhat in anticipation. Two of the jurors that were struck are also disabled and we would object to them being struck for some reason for *415 the fact that they have indicated that they were disabled. It is the same premise as the Batson rights, 15th [sic] amendment.
* * * *
THE COURT: The State has only exercised four of its six peremptory challenges. The Court finds that there is not a prima facie case for a Batson challenge to be established. So that would be overruled.
MR. DE GRUY: Your Honor, we would like the record to be clear, also there are only two jurors who list disabilities on the jury and both of them were removed. We would ask that the State give reasons other than their disability for striking them.
THE COURT: I am going allow you to place into the record your reasons for the challenges of those two jurors.
MR. DELAUGHTER: Your Honor, as far as Michael Jackson, juror 3 on panel 2, is concerned, this individual is the one that had indicated that he knew the defendant from the streets, the Hooker street area. He is the one that indicated that he had had a bad experience with Jackson police officers and he also had a friend that was charged with rape, Your Honor.
And in addition to those concerning Jackson and also concerning Carter, I would point out to the Court that in this particular case the defense has submitted to the state by a letter of September 14, 1999, that part of their defense is going to be based on some disability of the defendant. And any other case if this was not going to be part of the very defense, they might have a claim. But in this particular instance it is not just because that the person is disabled arbitrarily that the state is choosing to challenge them, but that this is something that is going to be raised by the defense in the trial before the Court, Your Honor.
* * * *
THE COURT: All right. The Court will overrule the objection to the peremptory challenges by the state and the challenges will be allowed.
¶ 19. The Mississippi Supreme Court has established the following standard of review to which this Court must adhere when it reviews an allegation of error based on Batson:
[A] reviewing court should give the trial court "great deference." "Great deference" has been defined in the Batson context as insulating from appellate reversal any trial findings which are not clearly erroneous.
* * * *
[A] trial judge's factual findings relative to a prosecutor's use of peremptory challenges on minority persons are to be accorded great deference and will not be reversed unless they appear clearly erroneous or against the overwhelming weight of the evidence. This perspective is wholly consistent with our unflagging support of the trial court as the proper forum for resolution of factual controversies.
Lockett v. State, 517 So.2d 1346, 1349-50 (Miss.1987).
¶ 20. Under Batson, in order for the defendant to raise a prima facie case that the prosecution has improperly struck a potential juror on the basis of race, it must be shown that he is "a member of a cognizable racial group," and that the prosecution has "exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact that peremptory challenges [allow] ... those to discriminate who are of a mind to discriminate, [and] the defendant must show that these *416 facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race." Batson, 476 U.S. at 96, 106 S.Ct. 1712.
¶ 21. Once a defendant has made a prima facie case of purposeful discrimination, the burden then shifts to the State to announce race-neutral reasons for the exclusion of those people from the venire. Batson, 476 U.S. at 97, 106 S.Ct. 1712. Where a trial court has ruled that a prosecutor's explanations were valid race-neutral reasons, the reviewing court will assume the prima facie requirement has been met. Lockett, 517 So.2d at 1349; see also Hernandez v. New York, 500 U.S. 352, 359, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) (Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot.). The State's explanation need not rise to the level of justification as required for a challenge for cause. Harper v. State, 635 So.2d 864, 867 (Miss.1994).
¶ 22. John Florence is a black male. The prosecutor exercised four of his six allotted peremptory challenges against black veniremen, two of which listed a disability. After Florence made the Batson challenge, the trial judge deferred ruling on it until the selection process was complete. After the process was completed, the trial judge ruled that a prima facie case of purposeful discrimination had not been made.
¶ 23. As stated, under Batson, when a defendant shows that he is a member of a cognizable racial group and that the prosecution has exercised peremptory challenges to remove from the venire, members of the defendant's race, an inference arises that the prosecutor has used that practice to exclude the veniremen from the petit jury on account of their race. Once this inference, which is tantamount to a prima facie case, is established, the prosecutor is required to announce race-neutral reasons for the exclusion of those persons from the venire. Thus, we hold that a trial judge is not authorized under Batson to defer the requirement that the prosecution give its race-neutral reasons for its strikes at the time the inference arises, until the jury selection process has concluded. In this case, the trial judge ruled at the end of the process that no prima facie case had been established. Apparently, the trial judge viewed the final makeup of the juryseven black females, two black males, one white female, and two white malesas proof that the earlier strikes were not racially motivated. We do not condone this process and believe it to be violative of the dictates of Batson. Nevertheless, this Court cannot find that the trial judge was clearly erroneous in his final assessment of the matter because the record and final makeup of the jury compels the conclusion that the prosecutor had to necessarily have accepted a number of African American jurors before striking the four.
¶ 24. Moreover, although the prosecutor peremptorily struck four black veniremen, he gave viable reasons for striking the two who possessed a disability. A major thrust of Florence's defense was that he could not have committed the burglary because he had a disability. We find that the reasons expressed by the prosecutor for his challenges to the two black prospective jurors who had listed disabilities were non-pretextual and not in violation of Batson. "When we examine all of the facts surrounding the case, they simply fail to create an inference that the prosecution *417 purposefully and intentionally struck potential jurors solely because they were black." Dennis v. State, 555 So.2d 679, 681 (Miss.1989).

4. Testimony of Officer Steven McDonald
¶ 25. Florence argues that Officer McDonald's testimony concerning the white powdery substance on Florence's clothing was beyond the scope of permissible lay opinion testimony and required specialized skill, training and knowledge, none of which was possessed by McDonald. Additionally, Florence argues that McDonald was not disclosed through discovery as an expert nor was he qualified, tendered and accepted as an expert qualified to deliver such testimony. Therefore, according to Florence, the admission of this testimony constituted reversible error.
¶ 26. Rule 701 of the Mississippi Rules of evidence states:
If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to the clear understanding of his testimony or the determination of a fact in issue.
¶ 27. The Mississippi Supreme Court has limited lay witness opinion testimony to those opinions or inferences which are rationally based on the perception of the witness and are helpful to the clear understanding of his testimony or the determination of a fact in issue. See Couch v. City of D'Iberville, 656 So.2d 146, 153 (Miss. 1995); Sample v. State, 643 So.2d 524, 529-30 (Miss.1994) (if the witness must possess some experience or expertise beyond that of the average, randomly selected adult, it is a Rule 702 opinion and not a Rule 701 opinion); Mississippi State Highway Commission v. Gilich, 609 So.2d 367, 377 (Miss.1992) (lay opinions are those which require no specialized knowledge however attained).
¶ 28. McDonald's testimony was that the white powdery substance on Florence's clothing was consistent with the sheet rock powder found near the hole cut in the sheet rock wall. This Court finds that McDonald's opinionthat a white powdery substance on the clothing of an individual apprehended at the scene of a burglary was consistent with sheet rock powderis a lay opinion that requires no specialized knowledge. We further find that Officer McDonald's opinion in this case was rationally based on his perception of the crime scene and was helpful to a clear understanding of his testimony and the determination of a crucial fact issue in this case, i.e, whether Florence entered the main part of the building through the hole that had been cut recently in the sheet rock wall. There was no error in the admission of this testimony.
¶ 29. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY OF CONVICTION OF BUSINESS BURGLARY AND SENTENCE OF SEVEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AS AN HABITUAL OFFENDER, WITHOUT PAROLE, PROBATION, REDUCTION OR SUSPENSION OF SENTENCE, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, MOORE, MYERS, PAYNE, AND THOMAS, JJ., CONCUR. LEE, J., NOT PARTICIPATING.